Ralph W. SHEBESTER, d/b/a Shebester Stallion Station, Plaintiff–Appellant,

v.

TRIPLE CROWN INSURERS, a Florida insurance corporation, Defendant–Appellee,

and

Quality Insurance Company, d/b/a Quality Property and Casualty Insurance Company, Defendant.

No. 87–2486.

United States Court of Appeals, Tenth Circuit.

Aug. 31, 1992.

district court encompassed this issue. Therefore, it is raised appropriately on appeal.

Alan Agee of Garvin, Agee & Meisel, Pauls Valley, Okl., for plaintiff-appellant.

Murray E. Abowitz of Abowitz & Welch, Oklahoma City, Okl., for defendant-appellee.

Before LOGAN and EBEL, Circuit Judges, and COOK,* Senior District Judge.

EBEL, Circuit Judge.

Plaintiff-appellant Ralph Shebester, d/b/a Shebester Stallion Station, appeals from a judgment in favor of Defendant-appellee Triple Crown Insurers. Pursuant to Okla.Stat. tit. 20, §§ 1601–11, we certified to the Oklahoma Supreme Court a question of state law. In light of the Oklahoma Supreme Court's response, *Shebester*

---

* Honorable H. Dale Cook, Senior Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

*v. Triple Crown Insurers,* 826 P.2d 603 (1992), we affirm in part, reverse in part, and remand for further proceedings.

In March 1984, Shebester sold a horse named Calm Tom to the Calm Tom Partnership for $75,000.[1] The sales agreement provided that $25,000 would be paid at the time of sale with two remaining installments to be paid on September 1, 1985, and September 1, 1986. The agreement further provided that the partnership would purchase and have in force an insurance policy with adequate coverage naming Shebester as beneficiary to the extent of the outstanding debt.

The partnership initially complied with the sales agreement by purchasing an insurance policy that named Shebester as a beneficiary. Then, for unknown reasons, the partnership purchased a new policy from Triple Crown that did not name Shebester as a beneficiary or lien holder. In selling the policy, Triple Crown was acting as an agent for Quality Property and Casualty Insurance Company.

Calm Tom died in September 1985. John Flint, the managing partner of the partnership, informed Triple Crown that Shebester had a $50,000 lien on Calm Tom, and that the partnership had intended to have Shebester named as a beneficiary on the policy to the extent of his interest. Flint requested that payment under the policy reflect Shebester's interest. Shebester provided Triple Crown with a copy of the sales agreement. Despite this notice and proof, Triple Crown paid $130,000 under the policy to "George Marchbanks and/or Calm Tom Partnership." The partnership then made an additional $25,000 installment payment to Shebester, but the final $25,000 installment remains unpaid.

Shebester commenced this action against the partnership and Triple Crown. When he later learned that Triple Crown was acting as an agent for Quality, he amended his complaint to add Quality as a party.

Shebester and Triple Crown moved for summary judgment, Shebester on tort theories, Triple Crown on contract theories. The district court denied Shebester's motion on the ground that Shebester made only general allegations that he is entitled to recover in a tort action but failed to specify any cause of action except one for conversion, which it rejected because Shebester had no legal or possessory interest in the insurance proceeds. It granted Triple Crown's motion because it thought Shebester had admitted that Triple Crown could not be held liable for any action sounding in contract.[2]

On appeal we certified to the Oklahoma Supreme Court the question whether under Oklahoma law Shebester could state a cause of action in tort against an agent of an insurance company under the facts of this case. We identified two possible tort theories: conversion, and an "as of yet unnamed tort" based on the agent's payout of insurance proceeds when it has knowledge of a claim. The Oklahoma Supreme Court concluded that Shebester did not have a statutory or common law conversion claim, and refused to fashion a new tort to hold an insurer's agent liable for failure to pay proceeds to the proper claimant. *Shebester,* 826 P.2d at 607–08. However, the court then identified two contractual theories of liability that might be available to Shebester: 1) the seller as a third-party beneficiary, and 2) an agent's quasi-contractual liability for wrongful payout. *Id.* at 609–10. It also mentioned, but did not discuss the applicability of the tort of breach of duty of good faith because Shebester had not advanced the theory and we had not certified it. *Id.* at 608 n. 18.

The parties filed supplemental briefs in this court addressing the Oklahoma Supreme Court's decision. Shebester argued that he met all of the elements of the three theories of liability suggested by the Oklahoma Supreme Court. Triple Crown responded that Shebester admitted early in

---

1. The partnership consisted of George Marchbanks, John Flint, J. Kelly Flint, and Pat Swan.

2. Shebester obtained a $25,000 judgment against the partnership, which remains unpaid as far as

we know. The action against Quality was stayed because Quality had been placed in receivership in another state.

the proceedings that Triple Crown could not be liable for any contractual cause of action, citing the district court's statement that "[t]he plaintiff has admitted that Triple Crown as agent for Quality Insurance cannot be held liable for any cause of action sounding in contract but has argued that it cannot escape liability for its own tortious actions." District Court's January 21, 1987, order at 3, attached to Appellant's Br. Shebester responded that the district court was wrong, and that his actual position was that an agent acting for a *disclosed* principal cannot be held liable for the principal's actions under a contract theory, but Triple Crown was acting as an agent for an *undisclosed* principal and therefore could be held liable under a contract theory.

Shebester argued in the district court, in opposition to Triple Crown's motion for summary judgment, that the motion should fail if the case were decided solely on contract principles because there was a factual dispute over whether Shebester knew or should have known that Triple Crown was an agent acting for an undisclosed principal. I R, doc. 55 at 5. The pretrial order identifies as a legal issue whether Triple Crown was contractually liable to Shebester. *Id.*, doc. 61 at 4. We conclude that the district court was mistaken in its view that Shebester conceded Triple Crown had no contractual liability.

■ The third-party beneficiary theory requires proof that Shebester was a third-party beneficiary under the insurance policy, and that Triple Crown was acting as an agent for an undisclosed principal. *Shebester*, 826 P.2d at 610. "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Okla.Stat. tit. 15, § 29. The third-party beneficiary need not be a party to or be named in the contract to occupy third-party beneficiary status. *Shebester*, 826 P.2d at 610. Rather, the determining factor is the parties' intent "as reflected in the contract which must provide the answer to the question of whether the contracting parties intended that a third person should receive a benefit

which might be enforced in the courts." *Keel v. Titan Constr. Corp.*, 639 P.2d 1228, 1231 (1981). The question is one of construction of the contract, determined by the terms of the contract. *G.A. Mosites Co. of Ft. Worth, Inc. v. Aetna Casualty & Sur. Co.*, 545 P.2d 746, 749 (1976).

■ A third-party beneficiary contract exists if the proceeds of an insurance policy are payable to a third party. *Roach v. Atlas Life Ins. Co.*, 769 P.2d 158, 161 (1989). Shebester's complaint alleges that the insurance policy does not name him as a beneficiary or lien holder. The policy does not otherwise direct that proceeds be paid to a third party. Shebester has not identified any provision in the insurance policy indicating that it was intended to be made for his benefit. In fact, the policy provides that "[t]his insurance shall not insure directly or indirectly to the benefit of any carrier, bailee, or *other party* by stipulation in bill of lading or by assignment *or otherwise* and any breach of this condition shall render the Policy null and void." Addendum to Appellant's Br. Ex. C at 6 (emphasis added). Although the district court did not address the third-party beneficiary theory, we affirm in part its granting of Triple Crown's motion for summary judgment because there is a record sufficient for us to conclude that Shebester cannot recover under the third-party beneficiary theory. *See Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir.1988).

As to the quasi-contractual liability for wrongful payout theory, the Oklahoma Supreme Court recited the generally accepted principles that "(1) an insurer who chooses to pay one of two or more competing claimants does so at its own risk; and (2) payment to the named beneficiary with notice of another person's adverse claim renders an insurer liable to the legally entitled claimant for the amount wrongfully paid." *Shebester*, 826 P.2d at 610. The supreme court characterized this liability as quasi-contractual, i.e., one that is imposed or created by law without regard to the assent of the party bound or to privity of contract. *Id.* The liability of an insurer (or of an insurer's agent acting for an

undisclosed principal insurer) rests on an implied-in-law obligation to pay the rightful claimant. *Id.* at 611. The court then held that "an agent for an undisclosed insurer is itself bound by a quasi-contractual duty, not only toward the beneficiary named in the policy, but also to those outsiders of whose claimed interest in the proceeds the agent has timely notice." *Id.* The court noted that Shebester *"clearly was the superior claimant." Id.* at 612.

Shebester's First Amended Complaint alleged that Triple Crown was acting as a general agent for Quality, that the partnership agreed to name Shebester as a beneficiary on an insurance policy, that it failed to do so, and that both the partnership and Shebester notified Triple Crown of Shebester's interest in Calm Tom. The partnership directed Triple Crown to include Shebester as a payee, but Triple Crown failed to do so. Shebester did not allege that Triple Crown was acting as an agent for an undisclosed principal.

Triple Crown's motion for summary judgment was based on its assertion that it was at all times acting as an agent for a principal, that it disclosed its agency to "all those with whom it dealt," I R, doc. 37 at 2, and, as such, it had no contractual liability to Shebester. It did not dispute that it had notice of Shebester's claim at the time of payout. In response, Shebester submitted his and his controller's affidavits stating that before Triple Crown filed its response to the original complaint, they were unaware that Triple Crown was acting as an agent for Quality.

 We conclude that we should remand for the district court to determine whether Shebester has alleged facts sufficient to come within the quasi-contractual liability for wrongful payout theory. If so, the district court must then determine whether there are any genuine issues of material fact. Fed.R.Civ.P. 56(c). That court must determine whether Shebester "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec. Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Resolution of whether there is a genuine issue of material fact might depend in part on legal issues such as whether an agent must disclose its agency to a party seeking proceeds even though there was no preexisting contractual relationship with that party, or whether it would be sufficient for the agent to disclose its agency as a matter of public record. Nevertheless, we leave it to the district court to decide 1) whether there is a genuine issue as to any material fact; 2) whether Triple Crown was acting as an agent for an undisclosed principal; and 3) whether Shebester was the superior claimant.[3]

 Shebester stated in his original reply brief at 10, that "[t]he cases cited by Triple Crown on pp. 7–8 of its Answer Brief are inapplicable since they deal with a theory of recovery (bad faith failure to settle) *which has never been asserted by Shebester."* (Emphasis added.) Shebester waived the theory of breach of duty of good faith and fair dealing.[4]

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED in part, REVERSED in part, and the matter is REMANDED for further proceedings.

---

**3.** The Oklahoma Supreme Court's observation that Shebester *"clearly was the superior claimant,"* 826 P.2d at 612, is not binding on the district court on remand as this question was not certified to the Oklahoma court, and it is unclear whether the Oklahoma court had an adequate record to make this determination.

**4.** Even if Shebester had not waived the theory, he nevertheless could not prevail on it as he failed to show a statutory or contractual relationship between him and Triple Crown. *See Shebester,* 826 P.2d at 608 n. 18.